IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

Jamie Fox,

        Plaintiff,

  v.

Eric K. Shinseki, Secretary of the Department of

Veterans Affairs, Agency,

        Defendant.

_____/

No. CV 11-04820 EDL

**ORDER FOLLOWING IN CAMERA
REVIEW OF SELECTED DOCUMENTS**

On May 2, 2013, the Court agreed to conduct an *in camera* review of a subset of documents withheld by Plaintiff on the grounds of attorney-client privilege and work product protection. See Dkt. 118, 121. The Court also ordered the parties to set forth their respective positions on privilege and work product in light of the facts that Plaintiff is not represented by counsel and third-parties were copied on some of the communications. Id. The Court also expressed concern that Plaintiff was attempting to use a "common interest" privilege as a stand-alone privilege. Id.

Having received the parties' briefing and reviewed the submitted documents *in camera*, the Court makes the following rulings. The parties have agreed to apply these rulings to the remainder of the documents withheld. Plaintiff shall use this order as guidance and produce non-privileged documents immediately.

**A.**    **Attorney-Client Privilege**

Among the subset of documents provided to the Court, the following were withheld on the basis of attorney-client privilege: 56, 60, 77,155, 260, 280, 361, 368, 371, 380, 381, 383, 387, 388, 390, 404, 418, 433, 434, 436, 441, 444, 446, 465, and 487.

Plaintiff acknowledges that she has "not been represented by counsel in this litigation or prior administrative proceedings," but contends that she has sought legal advice from attorneys, including her former co-worker Ann Williams, and understood that these communications were privileged. Dkt. 124 at 1.  Plaintiff has thus withheld these communications on the basis of attorney-client privilege.  Plaintiff states that she asked Williams to represent her formally, but Williams was apparently unwilling to do so because she is a material witness in Plaintiff's case.  Id. at 1-2.

Defendant argues that Plaintiff's claims of attorney-client privilege should be viewed with skepticism in light of Plaintiff and Williams's personal friendship and points out that Williams's status as an attorney and friend of Plaintiff  does not automatically make all communications between the two privileged.  Id.  at 4.  Defendant also notes that Plaintiff has not set forth facts showing that Williams was an attorney at the time of any purported consultation.  Id. at 4 n.2.  Further, Defendant argues that it would be unreasonable to assume that Williams was acting in a professional capacity when there is no evidence that Williams has subject matter expertise to render assistance in Plaintiff's case and Williams could not have been acting appropriately as an attorney when she was working at the Department of Veterans Affairs ("the VA").  Id.  at 4 n.2.

To establish the attorney-client privilege, the proponent must show: "(1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) unless the protection be waived." In re Grand Jury Investigation, 974 F.2d 1068, 1071, n.2 (9th Cir. 1992). Regarding legal advice, the party seeking to withhold discovery must prove that the communications it seeks to protect were made primarily for the purpose of obtaining legal advice.  United States v. Salyer, 853 F. Supp. 2d 1014, 1018  (E.D. Cal. 2012); S. Union Co., v. Southwest Gas Corp., 205 F.R.D. 542, 546 (D. Ariz. 2002). Moreover, the privilege is not limited to the actual communication by the client to the attorney; it also protects the attorney's advice in response thereto.  In re Fischel, 557 F.2d 209, 211 (9th Cir. 1977).

"[W]hen deciding what constitutes legal advice from an attorney, the court examines whether the potential client reasonably believed that he was consulting an attorney and manifested an

intention to seek professional legal advice, even if actual employment does not result." .  S. Union Co., 205 F.R.D. at 546.  While an attorney's experience, or lack thereof, in a particular subject matter may be relevant to determining whether privilege applies, Salyer, 853 F. Supp. 2d at 1023-24, "[a] client does not lose protection for disclosures in special subject areas made to lawyers who are generalists." In re Sealed Case, 737 F.2d 94, 100 n.9 (D.C. Cir. 1984).

A party waives the attorney-client privilege by tendering voluntarily the contents of a confidential communication. Weil v. Investment/Indicators, Research & Mgmt, Inc., 647 F.2d 18, 24 (9th Cir. 1981).  The  waiver may include all other communications on the same subject.  Id. Because lack of waiver is an element of the attorney-client privilege, the party asserting privilege bears the burden of proving that there was no waiver.  Id.  at 25.

Regarding the communications solely between Plaintiff and Williams that were withheld due to attorney-client privilege and submitted to the Court, the communications were made in confidence, Plaintiff has asserted privilege, and, with the exception of Number 434, there has been no waiver.  There also appears to be no real dispute that Williams was, at all relevant time periods, an attorney.  Defendant acknowledges that "[t]he fact that Williams is an attorney, as well as a close friend of Plaintiff, does not, itself, convert the nature of the communications to privileged." Dkt. 124 at 4.  Moreover, Plaintiff believed Williams is and was an attorney, and the documents submitted demonstrate that Williams believed that as well.

The closer questions are whether there was an attorney-client relationship and whether the communications between Plaintiff and Williams related to legal advice.  On balance, the Court concludes that Plaintiff and Williams had an attorney-client relationship for purposes of the attorney-client privilege.   Plaintiff need not have actually hired Williams; it is enough that she sought legal advice from Williams in her capacity as an attorney.  According to Plaintiff, the only reason Williams did not represent her in this litigation is the conflict rule against serving as both an attorney and a witness.

The key question, then, is whether the communications between Plaintiff and Williams related to legal advice and are thus privileged. The Salyer case cited by Defendant is instructive. There, the defendant made calls to his attorney-girlfriend while in jail, although he was being

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

represented by other counsel.  853 F. Supp.2d at 1016, 1023.  The court found that most of the conversations between the defendant and his attorney-girlfriend were not privileged even when they touched on legal matters because "the predominate purpose of the conversations is decidedly personal, not professional."  <u>Id.</u> at 1022. In most of the conversations, it was the defendant who told the attorney what was going on legally, not the other way around.  She was not planning, strategizing, or counseling.  <u>Id.</u>  at 1022-23.  Nevertheless, the court did find some conversations privileged because "Salyer arguably sought legal advice from Longoria in her capacity as a professional legal advisor."  <u>Id.</u>  at 1029.

Most of the emails in this case are not predominately personal but rather involve Plaintiff seeking, and Williams providing, strategic advice about Plaintiff's case against the VA.  These communications involve, among other things, responding to Defendant's motions and what discovery Plaintiff should seek.

Other emails, however, are general discussions about Plaintiff's and Williams's situations vis-a-vis the VA, and must be produced.  Moreover, while portions of Number 434 are otherwise privileged emails between Plaintiff and Williams, the entire email string appears to have been forwarded to a third party.  Plaintiff therefore waived any privilege in these emails, and Number 434 must be produced in full.

<u>Submitted documents protected by attorney-client privilege that are properly withheld</u>: 56, 77, 155, 260, 280, 361, 368, 371, 380, 383, 387, 388, 404, 436, 441, 444 and 487.

Plaintiff may also withhold the portion of Number 381 comprising the email from Williams to Plaintiff, but the portion of Number 381 comprising the email from Plaintiff to Tracy Kita must be produced.

<u>Submitted documents not protected by attorney-client privilege that must be produced</u>: 60, 390, 418, 433, 434, and 465.

4

**B.      Common Interest Privilege**

Among the document submitted to the Court, Plaintiff has withheld the following on the basis of "common interest": 43, 96, 130, 446, and 482.[1]  As described in the Court's prior order:

> the joint-defense privilege, or common interest rule, is an extension of the attorney-client privilege.  Walker v. Financial Corp. of America, 828 F.2d 579, 583 n.7 (9th Cir. 1987). Typically, the attorney-client privilege will be deemed waived when the content of an otherwise privileged communication is disclosed to a third party or when communication occurs within the presence of a third party.  The joint-defense privilege is an exception to the waiver rule.  U.S. v Stepney, 246 F. Supp. 2d 1069, 1075 (N.D. Cal. 2003) ("The joint defense privilege was adopted as an exception to this waiver rule, under which communications between a client and his lawyer remain protected by the attorney-client privilege when disclosed to co-defendants or their counsel for purposes of a common defense.")  The joint defense doctrine presupposes the existence of an otherwise valid privilege.  See In re Grand Jury Subpoenas, 902 F.2d 244, 249 (4th Cir. 1990).  The burden for claiming the joint-defense privilege is on Plaintiff, who must demonstrate that: (1) the communications were made in the course of a joint defense effort, (2) the statements were designed to further the effort, and (3) the privilege has not been waived. U.S. v. Bergonzi, 216 F.R.D. 487, 495 (N.D. Cal. 2003).

Dkt.  121.  As noted, as "an anti-waiver exception, it comes into play only if the communication at issue is privileged in the first instance."  Nidec Corp.  v. Victor Co.  of Japan, 249 F.R.D. 575, 578 (N.D. Cal.  2007) (Chen, J.).

The common interest or joint defense privilege originally arose from situations where a single attorney acted on behalf of multiple clients and has been extended to the joint defense context, such as "when the defendants are co-defendants in the same action or are defendants in separate actions sued by the same plaintiff." Id.  There need not be actual litigation for the privilege to apply, and it may in some circumstances extend to third parties who share a common interest with respect to a legal issue.  Id.  The purpose of this anti-waiver exception, however, is to allow parties with common legal interests to join forces to obtain more effective legal assistance.  Id.

Here, the documents withheld due to "common interest" for the most part reflect a situation where two friendly co-workers are discussing their respective proceedings with the VA.  Plaintiff has cited no case that extends the common interest privilege so far, and the withheld communications do not suggest that the parties are joining forces to obtain more

---

[1] The parties list Number 486 in their stipulation regarding *in camera* review, but this document was not submitted to the Court.  Consequently, the Court makes no finding on whether this document is properly withheld.

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

effective legal assistance.  Rather, as noted above, in many instances Plaintiff treated Williams as her attorney, undercutting the rationale for the common interest privilege.

Not only is the common interest privilege inconsistent with Plaintiff's argument that Williams acted as her attorney, but Plaintiff has not established that it should apply to protect the withheld communications.  Plaintiff has not described any common legal issues between her situation and Williams's in detail.  Plaintiff has also not demonstrated that the communications withheld under the common interest privilege relate to any specific legal interest.  Id. at 578.  Number 43 is an email between Williams and a third party and is thus not a privileged communication.  Likewise, Number 130 does not implicate legal advice or strategy or Plaintiff's claims against the VA, and neither does Number 446 because Williams is conveying facts and the communication does not reveal a privileged communication from Plaintiff.  In Number 482, Plaintiff communicates work product to Williams and others.  Although this email meets some of the elements of privilege, and the documents themselves might be work product, the face of the email indicates that it was sent to third parties, and Plaintiff has not met her burden of proving lack of waiver.  Finally, Number 96 is an email string where Plaintiff describes to Williams some questions she was asked.  There is no indication that Plaintiff was seeking legal advice when she emailed Williams, and she did not receive legal advice about her case in return.  In addition, parts of the communication were forwarded to a third party.  Because the underlying communications are not privileged, the common interest privilege does not protect Number 96.

The Court therefore orders that privilege log entries 43, 96, 130, 446, and 482 be produced.  Any other document withheld under the common interest privilege must also be produced.

**C.    Work Product**

Among the subset of documents provided to the Court for in camera review, only two were withheld on the basis of work product protection – Numbers 184 and 434.  Number 184 is a forwarded communication between Williams and Bruce Choy, a former VA employee.  Number 434 is an email chain.  The most recent email in the chain is from Plaintiff to Hosea

Roundtree and attaches draft press releases. The rest of the emails in the chain are between Plaintiff and Williams. Plaintiff represents that this most recent email, between Plaintiff and Roundtree, has already been produced.

The work product doctrine is "a qualified immunity protecting from discovery documents and tangible things prepared by a party or his representative in anticipation of litigation." Admiral Ins. Co. v. United States District Court, 881 F.2d 1486, 1494 (9th Cir.1989); Fed. R. Civ. P. 26(b)(3). To qualify for work product protection, documents must have two characteristics: "(1) they must be prepared in anticipation of litigation or for trial, and (2) they must be prepared by or for another party [to the litigation] or by or for that other party's representative." In re Cal. Pub. Utils. Comm'n, 892 F.2d 778,780-81 (9th Cir. 1989); Fed. R. Civ. P. 26(b)(3).

Here, Number 184 is not protectable work product. There is no evidence that this email is a document prepared in anticipation of litigation, and parts of it were drafted by Bruce Choy, who is not Plaintiff's representative. Plaintiff must therefore produce this document.

The only portions of Number 434 potentially subject to work product protection are the three attachments. Plaintiff does not make a work product argument regarding these attachments, however, and in any event the attachments were forwarded to a third party. Like attorney-client privilege, work product protection is waived where disclosure is made to a third party and the disclosure enables an adversary to gain access to the information. Nidec Corp. v. Victor Co. of Japan, 249 F.R.D. at 580 (N.D. Cal. 2007).

Plaintiff should not withhold materials on work product grounds unless they meet the criteria set forth above.

**D.     Other Issues**

      1.     Waiver of Communications with Union Representatives

The privilege log lists five communications (Numbers 327-331) between Plaintiff, Williams, and AFGE Union representatives. Plaintiff has withheld these documents on the grounds of common interest. Although the parties did not submit these documents for in camera review, both address them. Plaintiff argues that these communications are privileged

United States District Court
For the Northern District of California

because the union representatives are outside consultants that are working with Plaintiff and

Williams.   In support, Plaintiff cites <u>Cavallaro v. United States</u>, 284 F.3d 236, 247 (1st Cir.

2002).  Defendants assert that there is no privilege for union-employee communications.

<u>Cavallaro</u> does not help Plaintiff.  There, the First Circuit found that communications

with an accounting firm were not privileged.  <u>Id.</u> at 247-49.  The court noted the general rule

that the attorney-client privilege extends to those employed to assist a lawyer in rendering legal

advice and further assumed that to sustain a privilege an accountant must be "necessary, or at

least highly useful, for the effective consultation between the client and the lawyer." <u>Id.</u> at 247-

48.

Here, Plaintiff provides no evidence that either she or Williams employed the union

representatives at issue or that the union representatives were necessary or highly useful for an

effective consultation.  There is no evidence that the union representative was acting as

Plaintiff's or Williams' agent.  Plaintiff also cites no authority for the proposition that there is

privilege for union-employee communications.  <u>See</u> <u>Dang v.  Sutter's Place, Inc.</u>, Case No.  C

10-02181 RMW (PSG), 2012 U.S. Dist.  LEXIS 97779, at *7 (N.D. Cal.  July 13, 2012)

(Grewal, J.). As a consequence, communications among Plaintiff, Williams, and union

representatives are not privileged, under the attorney-client or common interest doctrines.

2.      Confidentiality

As noted above, for the attorney-client privilege to protect communications, the

communications must be made in confidence. Defendant also argues that Plaintiff and

Williams had no expectation of privacy in their work email accounts. Dkt. 124 at 4-5.

Plaintiff does not dispute that she lacks an expectation of privacy in her work email accounts.

Dkt. 124 at 5 n.6.  Accordingly, communications sent using a VA email address are not

privileged.

3.      Factual Content

Defendant argues that the Court should order Plaintiff to produce "all factual content in

the withheld emails." Dkt. 124 at 5.  In support of this argument, Defendant asserts that "the

mere fact that non-privileged information was conveyed to a lawyer . . . does not prevent

**United States District Court**
For the Northern District of California

1  discovery of the non-privileged information." <u>Id.</u> at 4.  Defendant is correct in principle.  "A

2  fact is one thing and a communication concerning that fact is an entirely different matter."

3  <u>Upjohn Co. v. United States</u>, 449 U.S. 383, 395-96 (1981) (quoting <u>Philadelphia v.</u>

4  <u>Westinghouse Elec. Corp.</u>, 205 F.  Supp.  830, 831 (E.D. Pa.  1962)).

5        Defendant has not cited any authority for the result, however, that Plaintiff should go

6  through privileged emails and extract the facts from these emails "and produce all factual

7  content in the withheld emails." Dkt. 124 at 4.  The only case Defendant cites in this regard is

8  <u>Apple, Inc. v. Samsung Elecs. Co.</u>, Case No.  11 -01846-LHK, 2012 U.S. Dist. LEXIS 113126,

9  at *19 (N.D. Cal. Aug. 10, 2012) (Koh, J.).  In that case, the defendant objected to a deposition

10  designation because the deposition testimony referenced communications with defendants in-

11  house legal team.  <u>Id.</u>  The court overruled the objection because "the information to which the

12  witness testified is an underlying fact, and is not an attorney-client communication."  <u>Id.</u>  As

13  the Court instructed in <u>Upjohn</u>: "The client cannot be compelled to answer the question, 'What

14  did you say or write to the attorney?' but may not refuse to disclose any relevant fact within

15  his knowledge merely because he incorporated a statement of such fact into his communication

16  to his attorney." 449 U.S. 383 at 396 (quoting <u>Philadelphia v. Westinghouse Elec. Corp.</u>, 205

17  F. Supp. 830, 831 (E.D. Pa. 1962)).

18        In sum, although there may be some situations where a party can be compelled to

19  produce the factual portions of privileged emails via, for instance, redaction, <u>Andritz Spout-</u>

20  <u>Bauer, Inc. v. Beazer E. Inc.</u>, 174 F.R.D. 609, 633 (M.D. Pa.  1997) ("To the extent that purely

21  factual material can be extracted from privileged documents without divulging privileged

22  communications, such information is obtainable."), the documents submitted to the Court are

23  not amenable to such dissection.  <u>Id.</u>

24        3.    <u>Incomplete documents</u>

25        In many cases, Plaintiff provided the Court with what appear to be partial documents,

26  i.e., incomplete email chains and emails without their attachments.  The Court notes that its

27  guidance on whether the documents must be produced should be extended to the portions of

28  the documents not provided to it.  Specifically, if the Court orders that a particular document

1  shall be produced, it must be produced in its complete original form. If the Court orders that an

2  incomplete document is privileged, that determination extends only to the portion of the

3  document that the Court has reviewed.  With regard to attachments, they should be produced

4  unless Plaintiff can articulate a valid reason that the document should be withheld, and the

5  document is included in an appropriate privilege log entry.

6  **Conclusion**

7       The Court ORDERS Plaintiff to produce the following documents that were submitted

8  for in camera review:  43, 96, 60, 130, 184, 381 (part), 390, 418, 433, 434, 446, 465 and 482.

9  The parties shall meet and confer regarding any remaining disputes, if any, relating to the

10  production of Plaintiff's documents.

11  **IT IS SO ORDERED.**

12  Dated: June 10, 2013

    _Elizabeth D. Laporte_

13      ELIZABETH D. LAPORTE
    United States Chief Magistrate Judge

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28